HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

PROVIDENCE HEALTH SYSTEM-
WASHINGTON, a Washington nonprofit
corporation, doing business as
PROVIDENCE HORIZON HOUSE,

Case No. C06-5268 RBL

                    Plaintiff,

ORDER

          v.

JAMES H. BUSH, in his role as Trustee of
the Sarah Block Special Needs Trust, and
TERRI BLOCK, in her role as Guardian of
the Person and Estate of SARAH BLOCK,

                    Defendants.

This matter comes before the Court on competing motions to dismiss pursuant to Fed. R Civ. P. 12(b)(6), and motions for summary judgment. [Dkt. #s. 10, 12, 16 and 34]. The material facts are not in dispute and having reviewed the written and oral presentations of the parties, the Court hereby renders the following decision.

## FACTUAL AND PROCEDURAL BACKGROUND

On or about September 12, 2005, defendant Terri Block's daughter, Sarah Block, was seriously injured in an automobile accident in Pierce County, Washington. Complaint ¶ 8 [Dkt. #1]. Defendant Block is an employee of Providence and at all relevant times has been a participant in an employee welfare benefit plan for health coverage maintained by Providence under ERISA. *Id.* at ¶ 2. As a result of the

1  injuries sustained by Block in the accident, and as required by the Plan, Providence has paid $801,664.72.

2  This amount is projected eventually to equal $1 million. *Id*. at ¶ 8.[1]

3       The Plan constitutes a contract between Providence and Terri Block.  It includes the following

4  provision.

5            **Third-Party Liability** - If someone else is legally responsible or agrees to
             compensate you for injuries suffered by you or a family member, you will need to
6            reimburse the plan for up to 100% of any benefits the plan paid in connection with
             those injuries.  This reimbursement may be reduced in the same proportion by
7            which the settlement, judgment or other recovery is reduced for payment of costs
             and attorneys' fees reasonably incurred in obtaining that recovery.
8
9  Plan at page 5-5, Ex. 1 to Complaint.  Under the terms of this provision of the Plan, Providence argues that

10 defendant Block is obligated to repay it for any recovery from any insurance company, in an amount equal

11 to the full value of the benefits provided, less a proportionate share of reasonable attorneys' fees.  *Id*.;

   Complaint ¶ 10.
12
13      Several months after the accident, Farmer's Insurance Company agreed to settle Sarah Block's

14 underinsured motorist claims for $2,100,000 ("the Settlement Funds").  Complaint ¶ 9.  Due to Sarah

15 Block's incapacity, defendant Block was appointed guardian in a state proceeding entitled *In re the

   Guardianship of Sarah Block, an Alleged Incapacitated Person,* Pierce County (Washington) Case No.
16
   05-4-01531-7 ("the Guardianship Proceeding").  *Id*.
17
18      On March 23, 2006, defendant Block moved in the Guardianship Proceeding for an order creating

19 a "Special Needs Trust," which by its terms contains a "spendthrift" clause purporting to bar Providence

20 from making a claim against the settlement funds.  *Id*. at ¶ 11.  Providence intervened in the Guardianship

   Proceeding to protect its interest in the Settlement Funds, but a court commissioner on March 31, 2006
21
22 entered an order approving the creation of the Special Needs Trust.  *Id*.  On Providence's motion for

23 revision and over Providence's objections that its claim must first be determined before placing the

24 settlement funds beyond its reach, the Superior Court confirmed creation of the Special Needs Trust on

   April 21, 2006.  *Id*.  That order was timely appealed by Providence to the Washington Court of Appeals.
25
26 *Id*.

27

28      ────────────────────
          [1]As set forth in Providence's separately filed summary judgment motion, since the date the complaint was filed, this
   amount has increased to $801,664.72.  *See* Declaration of Diane Ramsey ¶ 3 [Dkt. #36].

Pursuant to the March 31, 2006 order of the Pierce County Superior Court, defendant Bush was appointed trustee of the Special Needs Trust. He therefore has possession and control of the Settlement Funds, minus certain sums paid to Block's attorneys pursuant to that same court order. Complaint ¶ 12.

In this action, Providence seeks to establish a constructive trust or equitable lien over the funds contained within the special needs trust. Providence relies on the terms and conditions of its plan, provisions of the Employee Retirement Income Security Act of 1974 (ERISA), specifically, § 502(a)(3), (29 U.S.C.A. § 1132(a)(3)); and recent case law handed down by the United States Supreme Court and lower federal courts. Defendants challenge the Court's jurisdiction and, alternatively, urge the Court to interpret language of the plan in such a way that allows, under various theories, the special needs trust to keep the funds intact.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law. Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1220.

## RULE 12(b)(6) STANDARD

Under FRCP 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief can be granted for one of two reasons: (1) lack of cognizable legal theory or (2) insufficient facts under a cognizable legal theory. *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L.Ed.2d 80 (1975); *accord, Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990). For purposes of a motion to dismiss, all allegations of material fact in the complaint are taken as true and construed in the light most

favorable to the nonmoving party.  *NOW v. Scheidler*, 510 U.S. 249, 256, 114 S. Ct. 798, 127 L.Ed.2d 99 (1994); *Clegg v. Cult Awareness Network,* 18 F.3d 752, 754 (9th Cir. 1994).

## I.        Subject Matter Jurisdiction

Defendants[2] argue that this Court lacks subject matter jurisdiction because the funds which are the subject of this dispute are in a trust and not within the possession of a beneficiary of the Plan.  It is argued that "[u]nder Ninth Circuit jurisprudence, Providence did not have a claim to the settlement proceeds prior to the time those funds were disbursed to the Trust" and "[n]ow that those funds reside in the Trust, they are outside of the possession and control of a beneficiary of the Providence Plan, and therefore Providence cannot establish that it is entitled to equitable relief" under applicable law.  Bush Motion to Dismiss 12:21-25 ]Dkt. #10].

ERISA authorizes a civil action "by a . . . fiduciary (A) to enjoin any act or practice which violates . . . the terms of the plan, or (B) to obtain other **appropriate equitable relief** (i) to redress such violation or (ii) to enforce any provisions of . . . the terms of the plan."  29 U.S.C. § 1132(a)(3). [§ 502(a)(3)].

The United States Supreme Court distinguished between legal and equitable remedies in *Great-West Life and Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 122 S. Ct. 708 (2002).  In *Great-West* the ERISA plan sought specific performance of a reimbursement obligation imposed by the plan on a beneficiary who had recovered from a third party tortfeasor after receiving plan payments for medical expenses.  The Supreme Court held that § 502(a)(3) did not authorize the suit against the beneficiary because the settlement funds had already been distributed to a special needs trust for the beneficiary's care.  *Id*. at 214.  Because the action was directed against the beneficiary and sought to impose personal liability for the benefits she had received from the plan, the remedy sought (a money judgment) was deemed to be legal and not equitable, and therefore beyond the subject matter jurisdiction conferred upon the federal courts by ERISA.

---

[2]Providence argues that its action for imposition of a constructive trust is directed only against James Bush, trustee of the special needs trust.  Because Terri Block has never had possession of the funds, Providence contends she lacks standing to argue against the imposition of such a trust.  As guardian of the person and estate of Sarah Block, Terri Block has a distinct and personal interest in the issue before this Court.  She has standing to participate in the debate over the issue of what constitutes appropriate equitable relief under § 503(a)(3). See *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 1055 S. Ct. 2965, 2972 (1985).

The Court did say that a plan could seek restitution in equity by pursuing a constructive trust or an equitable lien "where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." *Id*. at 213. Because the funds were no longer in the possession of the defendant-beneficiary, the Court held that petitioners were seeking legal relief not authorized by § 502(a)(3).

At the time of its writing, the *Knudson* decision seemed to affirm the narrow reading of § 502(a)(3) which the Ninth Circuit had given in prior cases. The Circuit had repeatedly ruled that ERISA does not provide a cause of action for legal actions for monetary damages disguised as suits in equity. In *Watkins v. Westinghouse Hanford Co.,* 12 F.3d 1517 (9th Cir. 1993), the Court explained that "[i]t makes no difference that the Watkinses' claim is equitable in nature," rather, the critical factor was the "substance of the remedy sought (i.e. injunction versus damages) rather than the label placed on that remedy." *Id*. at 1527-28 n.5. See also, *McLeod v. Oregon Lithoprint, Inc.,* 46 F.3d 956, 960 (9th Cir. 1995).

In keeping with its narrow construction of "appropriate equitable relief" as used in § 502(a)(3), the Ninth Circuit in *FMC Medical Plan v. Owens*, 122 F.3d 1258 (9th Cir. 1997) acknowledged that an action to impose a constructive trust was an allowable ERISA remedy but observed that "a constructive trust is born of some form of ill-gotten gain of another's property." *Id*. at 1261. Moreover, the Court required that "in order to allow a claim for constructive trust under ERISA, a breach of fiduciary duty must be present." *Id*.

The Ninth Circuit summarized its understanding of the requirements for stating a cause of action under § 502(a)(3) as follows:

> "An ERISA plan must demonstrate (1) that it is an ERISA fiduciary, and (2) that it is seeking equitable, rather than legal, relief. Actions by ERISA fiduciaries seeking to enforce an ERISA plan's contractual reimbursement provisions do not fall within § 1132(a)(3). The remedies of restitution and the imposition of a constructive trust are available under § 1132(a)(3), but only as true equitable remedies and provided the traditional requirements of fraud or wrong-doing are satisfied."

[internal citations omitted] *Carpenters Health and Welfare Trust for Southern California v. Vonderharr*, 384 F.3d 667 (9th Cir. 2004).

Recently, the United States Supreme Court decided *Sereboff v. Mid Atlantic Medical Services, Inc.,* 126 S. Ct. 1869 (2006).  The Court held there that an ERISA plan, acting under § 502(a)(3), could recover amounts paid for medical expenses from a plan beneficiary where the constructive trust was sought over a specifically identifiable fund.  The funds were in the possession of the beneficiary and the source of the funds was a third party tortfeasor.  The action therefore sought appropriate equitable relief under ERISA.

Here, the one possessing the traceable funds is not the beneficiary of the plan (Terri or Sarah Block) but rather James Bush, the trustee of the special needs trust.  Defendants argue that "appropriate equitable action" under § 502(a)(3) can only be taken against a participant in the plan.  Defendants are wrong.  The *Sereboff* decision acknowledges a "familiar rule of equity that a contract to convey a specific object even before it is acquired will make the contractor a trustee as soon as he gets a title to the thing." *Id.* at 1877.

The action which Providence pursues against the Trustee targets a readily traceable fund and does not seek to impose personal liability on the Trustee.  The trustee has possession of the funds and he took possession of the funds knowing that an equitable lien had been asserted by the plaintiff.  This Court has subject matter jurisdiction over plaintiff's equitable action to impose a constructive trust over these funds.

## II. Make Whole Doctrine

Defendants next argue that Providence is nevertheless not entitled to reimbursement, because Sarah Block has not been made whole by the payment of UIM benefits by Farmers.  For purposes of this motion, no party asserts that the $2.1 million in UIM payments fully compensates Sarah Block for her injuries.  Providence claims that the make whole doctrine, present in the common law of many states is not applicable because it does not assert subrogation rights under state law.  Rather, it seeks relief under federal law (ERISA) and it claims that federal common law preempts state common law on the subject.

### A.    Federal Preemption.

In enacting ERISA, Congress sought to "uniformly regulate the wide universe of employee benefit plans." *LaRue v. DeWolff, Boberg & Assoc., Inc.,* 450 F.3d 570 (4th Cir. 2006).  Congress broadly preempted previously available state-law causes of action and established an exclusive list of civil actions

available to parties aggrieved by a statutory violation.  See *Aetna Health, Inc. v. Davila*, 542 U.S. 200, 208-209 (2004).

As the Supreme Court pointed out in *Mertens v. Hewitt Assoc.,* 408 U.S. 248, 262, 113 S. Ct. 2063 (1993), ERISA is "an enormously complex and detailed statute that resolves innumerable disputes between powerful competing interests - not all in favor of potential plaintiffs."  The Court further observed that ERISA's civil enforcement provision attempts to settle "a tension between the primary ERISA goal of benefiting employees and the subsidiary goal of containing pension costs."  *Id.* at 262-263. Section 502(a)(3) represents an "interlocking, interrelated and interdependent remedial scheme" that "provide[s] strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly."  *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146, 105 S. Ct. 3085 (1985).

More to the point, our Circuit Court has repeatedly acknowledged that "ERISA contains one of the broadest preemption clauses ever enacted by Congress."  *PM Group Life Ins. v. Western Growers Assur. Trust*, 953 F.2d 543, 545 (9th Cir. 1992).  With few exceptions, Courts have consistently held that any gaps in ERISA's text must be filled by application of federal common law rather than the law of any particular state.  *Bombardier Aerospace Employee Welfare Benefits Plan v. Ferrer, Poirot & Wansbrough*, 354 F.3d 348 (5th Cir. 2003).  Accordingly, the Court will look to federal common law for guidance in its evaluation of defendants' request for application of the make whole doctrine.

### B.    Federal Common Law

In *Barnes v. Independent Automobile Dealers Ass'n. of Cal. Health & Welfare Plan*, 64 F.3d 1389 (9th Cir. 1995), the Ninth Circuit Court of Appeals adopted as federal common law the generally accepted rule that, in the absence of a clear contract provision to the contrary, an insured must be made whole before an insurer can enforce its right to subrogation.  *Id.* at 1395.  The Court adopted this principle of insurance law as a rule of interpretation.  The Court stated:

> No one doubts[3] that the beneficiary of an insurance policy
> or (as here) an employee welfare or benefits plan can if he
> wants sign away his make-whole right.  The right exists
> only when the parties are silent.  It is a gap filler.

---

[3]Because of the inherently unequal bargaining position between Plan Administrators and those they represent on the one hand (employers and insurers), and plan beneficiaries on the other hand, some critics urge adoption of the make whole doctrine, as a universal, non-negotiable feature of federal common law.  See for example, 55 Mercer L. Rev. 595; 9 Empl. Rts. & Employ. Policy J. 247; 2000 B.Y.U.L. Rev. 427.

ORDER
Page - 7

[citation omitted].  *Id*. at 1394.

In adopting the make whole doctrine as a "gap filler" rule of federal common law, the court noted that it is supported by substantial authority in existing insurance law, and it is consistent with ERISA's purpose of protecting participants in employee benefit plans.  *Id*. at 1394-95.

The plan language in this case states as follows:

> Situations may arise in which health care expenses are also covered by a source other than the plan.  If so, the plan won't provide benefits that duplicate the other coverage.   For example, the plan won't provide benefits that duplicate those available to a covered person under No-Fault motor vehicle or similar insurance, or through a state-sponsored program such as DSHS.  If another plan is the primary payor, a copy of the other plans' Explanation of Benefits (EOB) should be included with the claim you submitted to Providence Health Plan.

> **Third-Party Liability** - If someone else is legally responsible or agrees to compensate you for injuries suffered by you or a family member, you will need to reimburse the plan for up to 100% of any benefits the plan paid in connection with those injuries.   This reimbursement may be reduced in the same proportion by which the settlement, judgment or other recovery is reduced for payment of costs and attorneys' fees reasonably incurred in obtaining that recovery.

> . . .

> **Recovery of Excess Payments** - Whenever payments have been made in excess of the amount necessary to satisfy the provisions of this plan, the plan has the right to recover those excess payments from any individual, insurance company, or other organization to whom the excess payments were made. . . .

Plan at pages 5-4 - 5-5, Ex. 1 to Complaint [Dkt. #1].  From this language, Providence argues that the plan pays only when no other benefits are available, and the right to recover excess payments means that when the Plan pays for expenses prior to a third-party recovery, the plan has the right to recover each dollar paid, to the extent of 100% of what was paid, if that money is subsequently recovered from a third party. Plan at pages 5-4 - 5-5, Ex. 1 to Complaint; Declaration of Lisa R. Schmidt ("Schmidt Decl.") ¶ 3. [Dkt. #28].

The conclusion Providence draws from this language is that the make whole doctrine does not qualify its right to reimbursement under the Plan.  This Court does not agree.

ORDER
Page - 8

Nowhere in the plan language is there a suggestion, let alone a clear statement, that a plan beneficiary is signing away his or her make whole rights. Neither the make whole doctrine nor any euphemism sounding like the make whole doctrine is mentioned in the plan. Similarly, application of the make whole doctrine as a "gap filler" would not contravene any statement from the plan heretofore quoted to the Court by the parties.[4]

In *Beveridge v. Benefit Recovery, Inc.,* 2006 WL 2052696 (D. Ariz.) The ERISA plan in question clearly stated that "[t]he Plan's right of subrogation and repayment is not subject to the insured/injured party first being made whole, that is, 'make whole' rule does not apply to the Plan." *Id*. at 5. In the face of such language, the plaintiff-beneficiary did not argue the applicability of the make whole doctrine.

In *Moore v. Capital Care, Inc.*, 461 F.3d 1 (C.A. D.C. 2006), the plan language provided that the "Participant shall pay the Corporation all amounts recovered by suit, settlement, or otherwise from any suit, settlement, or otherwise from any third party or his insurer to the extent of the benefits provided by this Contract." *Id*. at 10. The Circuit Court found such language to be completely inconsistent with the notion that the participant could retain all settlement funds to the extent necessary to make her whole.

In *Administrative Committee of Wal-Mart Stores, Inc. v. Shank*, 2006 WL 2546797 (ED Mo. 2006), the plan in question made clear that "the plan has first priority with respect to its right to reduction, reimbursement and subrogation." *Id*. at 5. The plan language at issue in *Beveridge, Moore* and *Shank* is indicative of the clear, direct language which forecloses application of the make whole doctrine adopted in this Circuit as a principle of federal common law. In each plan the language either expressly mentioned make whole and eliminated it or included provisions which clearly left no room for the make whole doctrine (e.g. "First priority" to the funds or "Participant shall pay . . . all amounts recovered . . ."). No such language exists in the plan which is the subject of this dispute. Silence on the subject invokes the gap filler provisions of federal common law, in this case, the make whole doctrine.

---

[4]Neither the reference to reimbursement for "up to 100%" nor to "the plan won't provide benefits that duplicate the other coverage" is inconsistent with the proposition that a plan beneficiary reimburses nothing until a settlement or payment from a third party compensates the beneficiary for his/her entire loss, including past and future medical payments, past and future economic loss, and general damages.

**C.     Discretion of Plan Administrator to Interpret Terms of the Plan.**

Providence argues that if the plan's terms are not clear, the make whole doctrine still does not apply because the plan administrator has determined that the language in the plan excludes application of the doctrine.  Reply in Support of Motion for Summary Judgment, 8:4-11 [Dkt. #35].  The plan unambiguously confers discretion to the plan administrator to interpret the terms of the plan.  When the plan confers discretionary authority to interpret the terms of the plan upon the plan administrator, the Court reviews the administrator's interpretation of the plan's terms for abuse of discretion, not de novo. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S. Ct. 948 (1989).  *Abatie v. Alta Health & Life Insurance Co.,* 458 F.3d 955, 963 (9th Cir. 2006).

Here, the plan administrator's interpretation is either irrelevant, because it does not address the question before this Court, or constitutes an abuse of discretion, because it is not reasonable on its face.

The plan administrator asks the question: "is there any language in the plan which specifically embraces or endorses the make whole doctrine within the plan terms?"  Because the doctrine is nowhere mentioned, she concludes that the reimbursement requirement is not limited by the make whole doctrine. Declaration of Lisa Schmidt, ¶3 [Dkt. #28].  As stated earlier, in the Ninth Circuit, the make whole doctrine is included as a gap filler within the reimbursement language of a plan unless it is bargained away, expressly or by clear implication.  The plan administrator acknowledges that the plan language is silent on the subject of the make whole doctrine and does not opine on whether the doctrine is inconsistent with acceptance of federal common law on the point.

Counsel for Providence asks the Court to recognize a different rule of interpretation depending on whether the subject plan gives discretion to the administrator to interpret plan terms and conditions. Where no such discretion is granted, the *Barnes* test should apply and the "gap" created by silence on the subject would be filled by the make whole doctrine.  Where, as here, the plan does give discretion to the plan administrator, then it should be the administrator who fills the void and not the federal common law. Counsel contends that Judge Posner's opinion in *Cutting v. Jerome Foods, Inc.,* 993, F.2d 1293 (C.A. 7 1993) suggests such a result.  This Court disagrees.  The rule advocated by counsel would give the plan administrator unfettered discretion to create terms and conditions never intended by the parties, no matter how unreasonable.  While the discretion conferred upon the plan administrator is necessarily broad, it

1  cannot be exercised in such a way as to abrogate important rights of the beneficiary without so much as a

2  hint that the parties intended such an outcome.

3      A trustee may be given power to construe disputed or doubtful terms, and in such circumstances

4  the trustee's interpretation will not be disturbed if reasonable. *G. Bogert & G. Bogert, Law of Trusts and*

5  *Trustees*, § 559, at 169-171 (2d rev. ed. 1980); *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111,

6  109 S. Ct. 948 (1989). Here, on the subject at hand, the terms of the plan are not doubtful and the

7  interpretation of the plan administrator is not reasonable. The make whole doctrine is clearly not

8  eliminated from the plan by virtue of its precise terms. Applying the ruling in *Barnes* to the facts of this

9  case, the trustee, acting on behalf of the plan beneficiary, does not have to reimburse the plan until the

10  beneficiary is fully compensated for her loss.

11  **III.    First Party vs. Third Party Funds.**

12      Defendants' argue that the settlement funds paid to representatives of Sarah Block constitute first

13  party funds and therefore the plan, by its own terms, has no claim against them. The plan includes the

14  following provision:

15          **Third Party Liability** - If someone else is legally responsible agrees to
          compensate you for injuries suffered by you or a family member, you
16          will need to reimburse the plan for up to 100% of any benefits the plan
          paid in connection with those injuries.

17  Plan at 5-5, Ex. 1 to Ramsey Decl. [Dkt. #17].

18      The plan language is broad enough to include the payments made by Farmer's Insurance

19  ("someone else"). Moreover, under Washington law, an UIM payment is treated as coming from the

20  tortfeasor ("third party"). See *Hamm v. State Farm Mut. Auto. Ins. Co.*, 151 Wash.2d 303, 308 (2004).

21  Finally, the plan administrator has reasonably and correctly interpreted the language above as broad

22  enough to capture settlement payments such as that made by Farmer's here. Schmidt Decl., ¶ 5

23  [Dkt. #28].

24  **IV.    Supplemental Jurisdiction Over Providence's Breach of Contract Action.**

25      As an alternative claim, Providence asserts a breach of contract action against defendant, Terri

26  Block. Defendant Block argues that Providence's state law contract claim is precluded by the Ninth

27  Circuit's decision in *Providence v. McDowell*, 385 F.3d 1168 (9th Cir. 2004). Defendant is wrong. The

28  Court of Appeals in *Providence v. McDowell, supra* held that Providence's claim was not preempted by

ERISA and that it could assert its breach of contract claim under state law in state court. The state court claim may be brought in federal court pursuant to this Court's supplemental jurisdiction over state claims which form part of the same case or controversy as the federal claim alleged. 28 U.S.C. § 1367(a).

In light of the Court's ruling on the make whole doctrine, the state breach of contract claim becomes insignificant to the ultimate outcome of the dispute. If the make whole doctrine applies to the reimbursement language contained within the plan, then whether under breach of contract principles or as "appropriate equitable relief" provided under § 503(a)(3), the outcome is the same: no reimbursement of the plan is required until the plan beneficiary has been fully compensated for her loss.

## V.    Defendant Block's Motion for Summary Judgment.

Defendant Terri Block asks this Court to rule as a matter of law that Sarah Block has not been fully compensated by the $2.1 million insurance proceeds received to date. It is alleged that future medical care alone is projected to equal or exceed $17,000,000. Although for purposes of these motions, Providence does not assert that Block has been made whole, it does ask that the Court not rule on the motion until the parties have had some opportunity to conduct basic discovery. Because the parties have, by agreement, deferred discovery until the legal issues have been resolved, this Court will not grant the summary judgment at this time.

## VI.   Attorney Fees.

Defendants have asked the Court to award attorney fees and costs expended in defending this action. ERISA provides that "the Court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). To determine whether an award is appropriate, the Court must consider the following factors: (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing party to satisfy an award of fees; (3) whether an award of fees against the opposing party would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions. *Santa Monica Culinary Welfare Fund v. Marimar Hotel Corp.*, 920 F.2d 1491, 1495 (9th Cir. 1990). A court need not find that all five factors weigh in favor of the movant in order to direct an award of attorney's fees. *McElwaine v. U.S. West, Inc.*, 176 F.3d 1167, 1173 (9th Cir. 1999).

Defendants argue that this action represents the fourth attempt by Providence to secure a right of reimbursement from the proceeds of the UIM settlement. The persistence of Providence, they assert, serves to dissipate the funds in the trust. That may be so, but until now, Providence has been unsuccessful in its attempt to obtain a venue for consideration of its claim on the merits. Prior court appearances have focused upon defendants' attempts to move the settlement funds into a special needs trust, in part, to avoid facing the claim of Providence for reimbursement. Only now has Providence had the opportunity to advocate their claim for a constructive trust or equitable lien over these funds.

After consideration of the aforementioned factors, the Court agrees with Providence that no award of fees and costs should be made under the circumstances of this case. There is no culpability or bad faith on the part of any party to this dispute. Important issues within a rapidly evolving body of law have been presented for the Court's determination. Neither side should be criticized for their advocacy and certainly no action to deter similar action in the future is warranted.

Unfortunately, the Court in this circuit has previously ruled that the provision giving the Court "discretion" to allow reasonable attorney's fees and costs should be read broadly to mean that a plan participant or beneficiary, if she prevails in her suit to enforce her rights under the plan, should ordinarily recover an attorney's fee "unless special circumstances would render such an award unjust." See *Carpenters Health and Welfare Trust for Southern California v. Vonderharr*, 384 F.3d 667, 674 (CA 9, 2004). The Court cannot readily identify any "special circumstances" making such an award unjust save for perhaps its own out-dated devotion to principles from a bygone era, (1) the American rule that fees and costs should not be awarded to the prevailing party absent a clear right through contract or statute and (2) the word "discretion" should still mean "a public official's power or right to act in certain circumstances according to personal judgment and conscience" Black's Law Dictionary (7th ed. 1999).

The Court will accept declarations supporting the amount of fees and costs prayed for as well as briefing regarding the "special circumstances" exception to the Circuit's rule on the award of fees and costs.

**CONCLUSION**

For the foregoing reasons, the Court decides as follows:

1)   The Court has subject matter over the dispute.

2)   Defendant Bush's Motion to Dismiss [Dkt. #10] is **DENIED.**

3)   The make whole doctrine applies to the subject ERISA plan.

4)   Plaintiff's Motion for Summary Judgment [Dkt. #16] is **DENIED.**

5)   Defendant Block's Motion to Dismiss [Dkt. #12] and Motion for Summary Judgment
     [Dkt. #34] are re-noted to January 20, 2007 to give the parties time to conduct discovery
     and determine if Sarah Block has been made whole by the Farmer's UIM settlement.

6)   The request for attorney fees and costs is likewise re-noted for January 20, 2007.

7)   The parties are instructed to submit all necessary materials in connection with the
     application of the make whole doctrine and the request for fees and costs in accordance
     with Court rule given the assigned noting date.

DATED this 8th day of November, 2006.


RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE